UNITED STATES DISTRICT COURT'
DISTRICT OF MAINE

EDUIN GARCIA, et al.,                                )
        Plaintiffs,                                )
    v.                                           )
                              )
YVES LAPOINTE DRYWALL, INC.                          )
    and                                          )
AP DRYWALL, INC.                                     )
        Defendants.                                )
_____)
YVES LAPOINTE DRYWALL, INC.,                         )
        Crossclaim Plaintiff,                      )
    v.                                           )
                              )   No. 2:24-cv-00170-JAW
AP DRYWALL, INC.,                                    )
        Crossclaim Defendant.                      )
_____)
YVES LAPOINTE DRYWALL, INC.,                         )
        Third-Party Plaintiff,                     )
                              )
    v.                                           )
                              )
ANGEL PEREZ HERNANDEZ,                               )
        Third-Party Defendant.                     )
_____)

**ORDER ON MOTION FOR DEFAULT JUDGMENT**

Following entry of default, the court held an evidentiary hearing on the damages portion of a default judgment and partially grants default judgment against a crossclaim and a third-party defendant, awarding damages inclusive of the loss incurred by defendant as a result of plaintiffs' recovering damages, service awards to the named plaintiffs; and plaintiffs' attorney's fees, but denying the defendant's requested attorney's fees.

## I.     BACKGROUND

### A.     The Plaintiffs' Collective Action

On May 10, 2024, several Plaintiffs, acting for themselves and for others similarly situated, filed a collective and class action lawsuit against Yves LaPointe Drywall, Inc. (LaPointe) and AP Drywall, Inc. (AP Drywall), alleging that LaPointe and AP Drywall had failed to pay their employees in accordance with the Fair Labor Standards Act (FLSA) and Maine Unpaid Wage law (MUWL). *Compl.* (ECF No. 1). The Plaintiffs alleged that LaPointe was their employer and AP Drywall was their labor broker, and that even though they worked more than forty hours in one or more weeks, they did not receive any overtime compensation as required by the FLSA and MUWL. *Id.* ¶ 21.

On July 8, 2024, LaPointe filed a crossclaim against AP Drywall, *Def., Yves LaPointe Drywall, Inc.'s Answer and Cross-Cl.* (ECF No. 16), and on September 5, 2024, the Court entered a default against AP Drywall for its failure to respond. *Order* (ECF No. 22). On November 27, 2024, LaPointe filed a third-party complaint against Angel Perez Hernandez, *Third-Party Compl.* (ECF No. 30), and on March 25, 2025, the Court entered a default against Mr. Perez Hernandez for his failure to respond. *Order* (ECF No. 40).

Plaintiffs filed a motion for approval of settlement on May 5, 2025. *Settlement Agreement*, Attach. 1, *Memo. in Supp. of Pls.' Unopposed Mot. for Approval of Collective Action Settlement* (ECF No. 43). On June 26, 2025, LaPointe filed a motion for default judgment against AP Drywall and third-party defendant, Mr. Perez Hernandez. *Yves LaPointe Drywall, Inc.'s Mot. for Default J.* (ECF No. 44). On May

2

6, 2026, the Court held a fairness hearing and a damages hearing. The hearing was bifurcated, the first portion addressing the settlement proposal and the second portion addressing LaPointe's claim for damages against AP Drywall and Mr. Perez Hernandez. After the fairness hearing, the Court granted the motion for approval of settlement and the settlement proposal. *Order on Settlement Proposal* (ECF No. 68). This order addresses only the damages hearing.

### B.  The Motion for Default Judgment

On May 5, 2026, the day before the joint fairness and damages hearing, Attorney David Joyce, who represents LaPointe, submitted a declaration, stating that LaPointe is entitled to judgment of $115,956.97 against AP Drywall and Mr. Perez Hernandez. *Decl. of David B. Joyce* ¶ 8 (ECF No. 63). At the damages hearing, Attorney Joyce represented LaPointe and Mr. Perez Hernandez appeared pro se and represented both AP Drywall and himself.[1] After the damages hearing, on May 20, 2026, LaPointe filed a post-hearing memorandum in support of its motion for default judgment against AP Drywall and Mr. Perez Hernandez. *Memo. in Support of Mot. for Default J.* (ECF No. 67) (*Memo on Mot. for Default J.*). Mr. Perez Hernandez did not file a post-hearing memorandum, on behalf of himself or AP Drywall. The Court now considers the motion for default judgment.

---

[1]      The Court engaged in a colloquy with Mr. Perez Hernandez and concluded that he could defend AP Drywall in LaPoint lawsuit because he is an officer of AP Drywall, AP Drywall is a Maine Corporation, and it has five or fewer shareholders. *See* 4 M.R.S. § 807(3)(J).

3

## II.    DISCUSSION

Where a default is entered because of the failure to plead or otherwise defend, the Court takes the facts stated in the complaint as true. *See Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002). "A plaintiff must nevertheless establish that on the law it is entitled to the relief it seeks, given the facts as established by the default." *United States v. Ponte*, 246 F. Supp. 2d 74, 76 (D. Me. 2003) (citing *Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 80 (1st Cir. 1998)).

LaPointe asserts that the admitted facts in the complaints, see *Yves LaPointe Drywall, Inc.'s Answer and Cross-Cl.* and *Third-Party Compl.*, and the evidence at the hearing established that AP Drywall and Mr. Perez Hernandez, not LaPointe, were the Plaintiff's employer. *Memo on Mot. for Default J.* at 6.  LaPoint did not have functional control nor actual control over the economic aspects of the employment relationship. *Id.* (citing *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33-34 (1st Cir. 2007) (discussing the economic reality test for determining the existence of an employment relationship)).  For example, AP Drywall, not LaPointe, would be responsible for AP Drywall employees, including wages, wage calculations, withholdings, and issuance of payment to its employees, for all work performed on Lapointe jobs. *Yves LaPointe Drywall, Inc.'s Answer and Cross-Cl.* ¶ 24.  Additionally, Mr. Perez Hernandez exercises operational control over all aspects of AP Drywall's day-to-day operations, including financial control of the business and compensation of employees. *Third-Party Compl.* ¶ 11.

Further, LaPointe asserts it is "entitled to the equitable remedy of indemnification and/or contribution from [Mr. Perez] Hernandez and AP Drywall" pursuant to the contractual arrangement with AP Drywall and principles of equity. *Memo on Mot. for Default J.* at 7. Among the facts deemed admitted by AP Drywall through default are the following:

1) Lapointe and AP Drywall agreed that Lapointe would hire AP Drywall as a subcontractor to provide construction services relating to framing, drywall, and hanging sheetrock on certain of its jobs located in Maine. *Yves LaPointe Drywall, Inc.'s Answer and Cross-Cl.* ¶ 23.

2) Lapointe and AP Drywall agreed that no AP Drywall employees would work more than 40 hours per workweek on any Lapointe jobs. *Id.* ¶ 25.

3) AP Drywall materially breached the contract by permitting its employees to work more than 40 hours in a workweek to the extent 40 hours were exceeded. *Id.* ¶ 26.

4) To the extent that 40 hours were exceeded, AP Drywall materially breached the contract by failing to pay its employees overtime, to the extent that occurred. *Id.* ¶ 27.

Among the facts deemed admitted by Mr. Perez Hernandez through default are the following:

1) Lapointe and Hernandez agreed that none of his employees would work more than 40 hours per workweek on any Lapointe jobs. *Third-Party Compl.* ¶ 13.

5

2)  Lapointe and Hernandez agreed that Lapointe would hire AP Drywall as a subcontractor to provide construction services relating to framing, drywall, and hanging sheet rock on certain of its jobs located in Maine. *Id.* ¶ 34.

3)  Lapointe and Hernandez agreed that none of his employees would work more than 40 hours per workweek on any Lapointe jobs. *Id.* ¶ 36.

4)  Hernandez materially breached the contract by permitting his employees to work more than 40 hours in a workweek to the extent 40 hours were exceeded. *Id.* ¶ 37.

5)  To the extent that 40 hours were exceeded, Hernandez materially breached the contract by failing to pay his employees overtime, to the extent that occurred. *Id.* ¶ 38.

In light of AP Drywall's admissions and the evidence presented at the May 6, 2026 default hearing, the Court concludes that LaPointe is entitled to the equitable remedy of indemnification and/or contribution from AP Drywall and Mr. Perez Hernandez for (1) $23,300, the loss incurred by LaPointe as a result of Plaintiffs' recovering damages; (2) $3,500 in service awards to the named Plaintiffs; (3) $23,000 in Plaintiffs' attorneys' fees.

The Court, however, denies LaPointe's motion insofar as it seeks $56,800 in legal fees LaPointe has paid either in defense of the Plaintiffs' action or in pursuit of its third party complaint. Even though AP Drywall and Mr. Perez Hernandez were defaulted, default judgment is a "drastic sanction" and contrary to the "goals of

6

resolving cases on the merits and avoiding harsh or unfair results." *Remexcel Managerial Consultants, Inc. v. Arlequinn*, 583 F.3d 45, 51 (1st Cir. 2009) (internal punctuation and citation omitted). Furthermore, Mr. Perez Hernandez appeared individually and on behalf of AP Drywall at the damages hearing and contested his liability for the damages LaPointe has sought. The Court has therefore reviewed LaPointe's claim for default damages to determine whether they are proper under the law. *See Bonilla*, 150 F.3d at 80. The Court determines that LaPointe's claim for damages is appropriate, except for its demand that AP Drywall and Mr. Perez Hernandez be held responsible for the attorney's fees LaPointe has incurred in defending the Plaintiffs' action and in prosecuting its third party complaint against AP Drywall and Mr. Perez Hernandez.

Pursuant to Rule 54(d)(2)(A), a party can recover attorneys' fees in a default judgment if they submit a motion for attorneys' fees. FED. R. CIV. P. 54(d)(2)(A). Although LaPointe "made a request in its motion for default judgment, it did not file a specific motion for attorneys' fees, and for that reason, the request [is] denied." *BCS CallProcessing, Inc. v. Sustainable Aquatic Food Exports, LLC*, 822 F. Supp. 3d 227, 233 (D. Mass. 2026). Further, the Court concludes that LaPointe failed to "establish that on the law it is entitled to the relief it seeks," *Ponte*, 246 F. Supp. at 76, because it merely cited principles of equity without elaborating on what aspect of the law establishes an exception to the American Rule. *Torres-Santiago v. Municipality of Adjuntas*, 693 F.3d 230, 234 (1st Cir. 2012) ("Parties to civil litigation are generally responsible for their own attorney's fees under the so-called 'American Rule'");

*Alyeska Pipeline Serv. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975) (Under the American Rule, each party ordinarily bears its own attorneys' fees absent statutory or contractual authorization).    Here, LaPointe has pointed to no statutory or contractual authorization for its claim of attorney's fees.

In *Dubois v. United States Department of Agriculture*, 270 F.3d 77 (1st Cir. 2001), the First Circuit addressed the so-called "American Rule" on fee shifting.  The First Circuit wrote that "[t]he 'American Rule' on fee-shifting generally prohibits the prevailing party from collecting attorney's fees from the losing party." *Id.* at 80 (citing *Alyeska Pipeline*, 421 U.S. at 247).

The *Dubois* Court recognized "[o]ne exception to the American Rule," which allows a district court to award attorney's fees to a prevailing party when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Dubois*, 270 F.3d at 80 (quoting *Chambers*, 501 U.S. at 33).  To invoke this exception under a claim of "vexatious" conduct, the moving party must demonstrate that the losing party's actions were "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Dubois*, 270 F.3d at 80 (quoting *Local 285 v. Nonotuck Resources Assocs.*, 64 F.3d 735, 737 (1st Cir. 1995)).  "Maine law similarly recognizes a limited 'bad faith litigation' or 'egregious conduct' exception to the American Rule." *Barrette Outdoor Living, Inc. v. Integrity Composites, LLC*, 666 F. Supp. 3d 18, 44 (D. Me. 2023) (citing *Soley v. Karll*, 2004 ME 89, ¶ 11, 853 A.2d 755 and *Linscott v. Foy*, 1998 ME 206, ¶ 17, 716 A.2d 1017)).

Because of its potency, however, a "court's inherent power to shift attorney's fees 'should be used sparingly and reserved for egregious circumstances.'" *Dubois*, 270 F.3d at 80 (quoting *Whitney Bros. co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1993) (quoting *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993)). Thus, the First Circuit concluded in *Dubois*, "the power to sanction must be used with great circumspection and restraint, employed only in compelling situations." *Dubois*, 270 F.3d at 80.

Here, LaPointe bases its claim for attorney's fees on two theories. First, as a part of the settlement of the Plaintiffs' action, LaPointe paid attorney's fees to the Plaintiffs in the amount of $23,000. *Memo on Mot. for Default J.* at 8. Furthermore, LaPointe was subject to the Plaintiffs' attorney's fees under the fee-shifting provisions of the Fair Labor Standards Act. *See* 29 U.S.C. § 216(b). The Court views these attorney's fees as collectible on the theories of contribution and indemnification for which AP Drywall and Mr. Perez Hernandez have been defaulted.

Second, regarding its own attorney's fees, both in defending the Plaintiffs' action and in pursuing its own third party complaint, the American Rule applies. LaPointe has failed to demonstrate that it is entitled to fee-shifting, either by statute or by the bad faith litigation or egregious conduct exception to the American Rule. The Court therefore declines to order payment of the $56,000 in fees incurred by LaPointe in defending the Plaintiffs' action or in prosecuting its third party complaint against AP Drywall and Angel Perez Hernandez.

## III.    CONCLUSION

The Court GRANTS in part and DENIES in part Yves LaPointe Drywall, Inc.'s Motion for Default Judgment (ECF No. 44).  The Court ORDERS judgment to issue in favor of Yves LaPointe Drywall, Inc. and against AP Drywall and Angel Perez Hernandez in the total amount of $49,800.00.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of July, 2026